**UNITED STATES of America, Plaintiff,**

v.

**Adebayo YAYA, Defendant.**

**No. 92 CR 538 (SJ).**

United States District Court,
E.D. New York.

July 9, 1992.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. (Charles D. Hammerman, of counsel), New York City, for plaintiff.

David G. Secular by David G. Secular, New York City, for defendant, Yaya.

## MEMORANDUM AND ORDER

JOHNSON, District Judge:

The defendant, Adebayo Yaya, was arrested on March 31, 1992 and arraigned the same day on a complaint. The arraignment resulted in the detention of the defendant. On May 1, the defendant was charged in a three count indictment. When Yaya was brought before Magistrate Judge Chrein to be arraigned, he sought dismissal of the indictment on the ground that the indictment had been filed beyond the thirty day period required by 18 U.S.C. § 3161(b). That motion was denied by Magistrate Chrein. Yaya moves again before this court for dismissal of the indictment on the same ground. In addition, Yaya moves for suppression of items seized from Storage Bin 1138 pursuant to a search warrant.[1]

## DISCUSSION

a. *Motion to Dismiss the Indictment*

The court denied defendant's motion to dismiss the indictment from the bench at oral argument on June 23. This memorandum clarifies the basis for that decision. Pursuant to 18 U.S.C. § 3161(h)(8)(A), a delay in indictment is justified if a judge finds that the ends of justice are served by excluding the period of delay. In this instance, Magistrate–Judge Chrein made such a finding.

---

1. The government has agreed not to offer the evidence seized from two other storage bins, Bins 1501 and 1551, in its case-in-chief. Therefore, the instant motion is limited to the physical evidence seized from Bin 1138.

On May 1, Magistrate–Judge Chrein found that the period of April 30 to May 1 was properly excluded because the delay was caused by a desire to bring the defendant to the Eastern District so that his attorney could inform him of the most recent plea offer. As soon as it became apparent that the defendant was uninterested in plea negotiations, Magistrate Chrein gave the Government but one day to seek an indictment. The Government immediately presented the case to the grand jury where an indictment was returned that same day. This court believes Magistrate Chrein's finding of excludable delay was proper under the circumstances. As such, defendant's motion to dismiss the indictment is denied.

### b. *Suppression Motion*

On June 23, the court held a hearing with respect to defendant's suppression motion. The court credits the testimony of Special Agent Andrew O'Connell of the United States Secret Service (the "Secret Service") and now makes following findings of fact.

### 1. FACTS

On February 24, 1992, a green and white shopping bag containing, *inter alia,* credit cards, an address book and various forms of identification with photographs of a man later identified as the defendant was found by a New York City Police Department ("NYPD") detective. The NYPD officer turned it over to the Secret Service. Special Agent O'Connell of the Secret Service pursued an investigation of the items found in the shopping bag.

O'Connell learned from credit card companies that certain of the charges reflected on several credit card accounts, including that of a person named William Shroeder, were unauthorized by the individuals whose names appeared on those credit cards. In addition, listed inside the address book was the address of a storage facility and a United States Resident Alien number. O'Connell learned from the Immigration and Naturalization Service that the Resident Alien number was assigned to Adebayo Yaya. O'Connell also found a rental agreement with the name William Shroeder, the same name as appeared on a credit card that O'Connell had previously been told contained unauthorized charges. The rental agreement reflected a Corona, Queens address as well.

Experienced in credit card fraud and the use of storage bins by those who commit such crimes, O'Connell went to Shugard's Storage Facility ("Shugard's"). Shugard's manager, Wayne Morgan, recognized the individual in the photographic identification cards found in the shopping bag. Morgan told O'Connell that the individual in the photos rented three storage boxes under the name of "Adebayo Yaya" and provided O'Connell with a home address for Yaya in Corona, Queens. That address corresponded to the address that appeared on the above-mentioned rental agreement.

O'Connell went to the Corona, Queens address where he observed defendant leave the premises. He recognized the defendant from the photo identification found in the shopping bag.

Several days later, O'Connell returned to Shugard's where the assistant manager invited O'Connell to look at the three bins rented by Yaya. On a stand-alone ladder, O'Connell was able to observe the interior of one bin, Bin 1138. Storage Bin 1138 is a small bin situated above another bin; a portion of the bin is opaque, but the upper portion is covered with wire mesh.[2] Among the numerous items seen (including several brief cases) was an Armstrong refrigerator. O'Connell recalled that one of the unauthorized charges was for Armstrong Appliances.

Based on his observations detailed in the affidavit supporting a request for an arrest and search warrant (and which need not be repeated herein), all of the other informa-

---

**2.** By pulling himself up on the sides of the bins, O'Connell was able to observe the interior of the other bins, Bins 1501 and 1551. The government has agreed not to offer in its case-in-chief any of the items seized from Storage Bins 1501 and 1551. *See* Government's Opposition to Defendant's Supplemental Memorandum of Law date July 7, 1992. As such, the motion to suppress is moot with respect to those items.

tion culled from his investigation and his expertise in credit card fraud, O'Connell sought and obtained from Magistrate–Judge Caden an arrest warrant for Yaya and search warrants for the Corona, Queens apartment and for the three storage bins rented to Yaya at Shugard's.

The search warrant authorized the agents

"to seize therefrom certain property, namely quantities of fraudulently obtained credit cards, merchandise bought with fraudulently obtained credit cards, lists of names and accounts for such credit cards, credit card receipts, credit card applications, false identification documents, cash, correspondence, checkbooks, bank records, and United States Postal Service change of address forms, all of which constitute evidence, instrumentalities and fruits of the conspiracy to traffic and use, and attempt to traffic and use, with the intent to defraud, in one or more unauthorized access devices during a one year period, and by such conduct obtaining things of value aggregating $1,000 or more, in violation of Title 18, United States Code, Sections 1029(a)(2) and 1029(b)(2)."

The agents, acting on the warrants, arrested the defendant and searched and seized evidence from his Corona apartment and from the Shugard's storage bins.[3]

### 2. ANALYSIS

At first, Yaya sought suppression of the evidence seized from Bin 1138 on the ground that O'Connell could not possibly have observed the items in the Shugard's storage bins through the mesh wire surrounding the top of Bin 1138. In a supplemental memorandum of law, the defendant raised another ground for the suppression of the evidence seized in Bin 1138. The defendant asserts that he had a reasonable expectation of privacy in Bin 1138 and that the observations of O'Connell into Bin 1138 from the ladder constituted an unlawful search. Additionally, Yaya asserts that the items seized must be suppressed because the warrant authorizing their seizure was overbroad. The court finds each of these contentions to be without merit.

At the outset, the court notes that O'Connell was clearly able to observe the items contained in Bin 1138. Therefore, the initial basis for defendant's suppression motion is without merit. As for defendant's expectation-of-privacy argument, it warrants more thoughtful consideration.

### A. Expectation of Privacy.

In *United States v. Taborda*, 635 F.2d 131 (2d Cir.1980) federal agents observed the defendant and another individual engaged in a narcotics transaction in the defendant's apartment from an apartment across the street. The defendant had a curtain on his window, but the agents made their observations with their naked eyes when the curtain was raised. Stating that the defendant undeniably had a reasonable expectation of privacy in his apartment, the Second Circuit concluded, however, that "observation of objects and activities inside a person's home by unenhanced vision from a location where the observer may properly be does not impair a legitimate expectation of privacy." *Taborda*, 635 F.2d at 139.

Similarly, in the instant case, O'Connell observed the items contained in Storage Bin 1138 in plain view from a place where he had gained lawful entry. Specifically, the court finds that the mesh wire enabled O'Connell, and as a matter of fact any person, to readily observe the interior of Bin 1138 from a vantage point he had been given free access to by Shugard's assistant manager. O'Connell used a free-standing ladder to observe the interior and did not interfere with the defendant's property to secure his observations. Indeed, O'Connell was not trespassing on any property when he saw, with his naked eyes, the contents of Bin 1138.[4]

---

**3.** As noted above, the instant motion is limited to the items seized in Storage Bin 1138 as the Government has agreed not to introduce in its case-in-chief the items seized in Storage Bins 1501 and 1551.

**4.** Yaya could have chosen to cover the wire mesh to avoid the observation of its contents by anyone given free access to the bin area.

Accordingly, I do not believe that the agents infringed upon the defendant's legitimate expectation of privacy. *Taborda* 635 F.2d at 139; *Florida v. Riley*, 488 U.S. 445, 109 S.Ct. 693, 696–97, 102 L.Ed.2d 835 (1989); *see also, United States v. Bellina*, 665 F.2d 1335, 1345 (4th Cir.1981) (holding that there is no illegal search within the Fourth Amendment where a police officer makes a visual observation of contraband from a vantage point he rightfully occupies). Based on the circumstances giving rise to O'Connell's observation, I conclude that no Fourth Amendment right was implicated. The motion to suppress based on an alleged unlawful search is therefore denied.

### B. Overbreadth of Warrant.

■ Finally, the evidence may not be suppressed on the ground that the search warrant was overbroad. Search warrants must satisfy a particularity requirement "to guard against general searches that leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized." *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990); *see also, Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). In addition, "the language of a warrant is to be construed in light of an illustrative list of seizable items." *Riley*, 906 F.2d at 844 (citing *United States v. Young*, 745 F.2d 733, 759–60 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985)).

In this instance, the warrant signed by Magistrate Caden authorized the search and seizure of a finite list of items, each of which specifically relates to credit card fraud. The affidavit in support of the warrant makes clear that the crime being investigated was credit card fraud. The reference to cash and correspondence does not make the warrant constitutionally infirm.

In *Young*, the Second Circuit did not find a warrant to be overbroad when it stated "money and notes" as being some of the items sought to be seized. *Young*, 745 F.2d at 758–760. Indeed, the court's concern in *Young* was largely with the catch-all phrase "and other evidence of a conspiracy...." And yet, in *Young*, the court

reasoned that the use of the term "money" in the search warrant following the term "other evidence" "was sufficient to permit the agents to seize such manifestations of wealth as furs, jewelry, and expensive automobiles." *Young*, 745 F.2d at 760. On that basis, the particularity requirement was satisfied. Likewise, in *Riley*, the court found that the term "bank records" was not so general as to nullify the particularity requirement of the Fourth Amendment.

In light of *Young* and *Riley*, the warrant herein was sufficiently specific (perhaps more specific than the *Young* warrant) in enumerating cash, correspondence and bank records that was evidence of fraudulent credit card transactions. Notably, the search warrant executed in this case did not have boilerplate language authorizing the agents to seize any "other evidence" of credit card fraud as well. *Compare United States v. Buck*, 813 F.2d 588, 591–92 (2d Cir.1987); *Riley*, 906 F.2d at 843; *Young*, 745 F.2d at 759–60. The warrant was specific in the evidence that it was authorizing the agents to seize and specified that each of those items was being seized as evidence of credit card fraud. Accordingly, suppression of the items seized is not warranted.

### CONCLUSION

Based on the foregoing, the court denies defendant's motions to dismiss the indictment and suppress evidence.

SO ORDERED.